IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

**HUNTINGTON DIVISION**

ANDRED DAVIS,

     Plaintiff,

v.           CIVIL ACTION NO. 3:20-0036

MILTON POLICE DEPARTMENT,
OFFICER DEAN BISHOP,
PATROLMAN WITHERS,
PATROLMAN ADKINS,

     Defendants.

**MEMORANDUM OPINION AND ORDER**

Presently pending before the Court is a Motion to Dismiss filed by Defendants Milton Police Department, Officer Dean Bishop, Patrolman Withers, and Patrolman Adkins. *See Mot. to Dismiss*, ECF No. 8, at 1; *Mem. of Law*, ECF No. 11, at 1. Over a month after Defendants filed their Motion, Plaintiff Andred Davis submitted a Response; pursuant to Local Rule of Civil Procedure 7.1(a)(7), the Court **STRIKES** it as untimely. *Resp. in Opp'n*, ECF No. 12. Nonetheless, the issues have been adequately presented to the Court through Defendants' briefing and their Motion is ripe for resolution. For the reasons set forth below, the Court **GRANTS IN PART** and **DENIES IN PART** the Motion.

**I. BACKGROUND**

This action arises out of a traffic stop that occurred on Interstate 64 near Milton, West Virginia on June 7, 2018.[1] *Compl.*, ECF No. 1, at ¶ 6. Roadwork was occurring at the time, and

---

[1] The Court draws these facts directly from the Complaint, and accepts them as true at this stage of litigation. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v.*

the speed limit was accordingly set at fifty-five miles per hour in the construction zone. *Id.* at ¶¶ 7–8. Plaintiff—an African-American male—was traveling through the construction zone when he was stopped by Officer Dean Bishop of the Milton Police Department. *Id.* at ¶¶ 8, 16, 20. The stop occurred near mile marker twenty-five, when Plaintiff was purportedly traveling at a speed of seventy-two miles per hour.[2] *Id.* at ¶ 8.

After Plaintiff had pulled over, Officer Bishop approached the stopped vehicle and requested Plaintiff's license, registration, and proof of insurance. *Id.* at ¶ 10. In response, "Plaintiff rolled his window down approximately 3-4 inches to allow the officer to see his face and produced his license, registration, and proof of insurance." *Id.* Bishop advised Plaintiff that the tint on his windows was illegal, and that he would need to roll them down further. *Id.* at ¶ 11. Plaintiff refused, informing Bishop "that he had just had the window tint put on the vehicle at Car Stuff, Inc. on [Route] 60 and that it was legal, and that he had proof of the tint percentage in the glove box." *Id.* at ¶ 12. Despite offering the documents Bishop had requested, Plaintiff recalls that he "never reviewed his license, registration, or proof of insurance." *Id.* at ¶ 18.

At this point, Plaintiff claims that Bishop escalated the situation by "walk[ing] to the other side of the car and bust[ing] the passenger window of the Plaintiff's vehicle." *Id.* at ¶ 13. Plaintiff recalls Bishop proceeding to "drag [him] from the vehicle." *Id.* Once outside, Plaintiff alleges that he "was grabbed, pushed up against the door, hit in the head, and beaten by all three officers."[3] *Id.*

---

*Twombly*, 550 U.S. 544, 570 (2007)).

[2] Though Plaintiff disputes that he was traveling seventy-two miles per hour, he does not appear to dispute that he was speeding. *Compl.*, at ¶ 9.

[3] The Court assumes that "all three officers" refers to the three individual defendants named in this case—that is, Officer Dean Bishop, Patrolman Withers, and Patrolman Adkins. *See Compl.*, at 1. It is not clear whether Withers and Adkins were in the same police vehicle as Bishop, or if they arrived separately. Also left unexplained is how, why, or when Withers and Adkins appeared on the scene.

at ¶ 14. The next thing Plaintiff recalls is being "shoved into the back of a police SUV" and being "charged with obstruction of justice, speeding & illegal window tint."[4] *Id.* at ¶¶ 14–15. As a result of his assault, Plaintiff claims that he "suffered cuts to his face and body from the broken glass, injuries to his body a[n]d wrist and severe mental anxiety causing him to seek treatment [from] a psychologist." *Id.* at ¶ 17. Although he recalls recording the incident on his cell phone, Plaintiff claims that "[h]is phone was confiscated" and that when "he received his phone back, there were parts of the video that had been deleted by the Milton Police Department." *Id.* at ¶ 21.

Plaintiff initiated the present action in this Court on January 13, 2020, filing ten-count Complaint alleging various violations of state and federal law. *See id.* at ¶¶ 22–68. Defendants filed an Answer on March 17, 2020, *Answer*, ECF No. 5, which they followed with the instant Motion to Dismiss on April 3, 2020. Plaintiff did not file any response. It is to a review of the legal standards surrounding Defendants' Motion that the Court now turns.

## II. LEGAL STANDARD

Rule 8(a) of the Federal Rules of Civil Procedure provides that a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." In cases where a party has arguably failed to state such a claim, Rule 12(b)(6) and authorizes courts to dismiss complaints that fail "to state a claim upon which relief can be granted." To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Though the line between "plausible" and "implausible" is not always clear, it is well established that a "claim has facial

---

[4] Plaintiff disputes that he committed obstruction of justice or that his windows were illegally tinted. *Compl.*, at ¶ 15.

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Mere "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Courts are likewise not required to consider "unwarranted inferences, unreasonable conclusions, or arguments." *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 615 n.26 (4th Cir. 2009).

All that said, the purpose of a motion to dismiss is to test the formal sufficiency of a claim for relief and not to resolve the facts or merits of a case. 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (3d ed. 1990). It follows that a court may only grant a motion to dismiss "if, after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears *certain* that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999) (emphasis added).

As a final matter, the issue at the motion to dismiss stage "is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims" he or she makes. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). As such, a motion to dismiss "generally cannot reach the merits of an affirmative defense." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007). Yet "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Id.* Significantly, "[t]his principle only applies . . . if all facts necessary to the affirmative defense clearly appear on the face of the complaint." *Id.* (citing *Richmond, Fredericksburg & Potomac R.R. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993)) (internal

quotations and punctuation omitted). With these standards in mind, the Court turns to a discussion of Defendants' Motion.

### III. DISCUSSION

The premise of Defendants' Motion is that "the entirety of Plaintiff's Complaint fails to state a claim under the facts alleged," and that "[d]ismissal is therefore warranted" pursuant to Federal Rule of Civil Procedure 12(b)(6). *See Mem. of Law*, at 28 (emphasis removed). Plaintiff's Complaint is divided into ten counts. Count One is raised against all defendants,[5] and alleges a violation of Article III, Section 6 of the West Virginia Constitution. *Compl.*, at ¶¶ 22–26. Count Two is a claim for vicarious liability raised against the Milton Police Department, and alleges violations of Sections 1, 5, 10, and 14 of Article III of the West Virginia Constitution. *Id.* at ¶¶ 27–31. Count Three is a straightforward negligent hiring, retention, and supervision claim raised against the Milton Police Department, *id.* at ¶¶ 32–36, while Count Four raises a general claim for punitive damages against all Defendants, *id.* at ¶¶ 37–41. Count Five is a claim for battery, *id.* at ¶¶ 42–46, and Count Six is a claim for intentional infliction of emotional distress, *id.* at ¶¶ 47–51, both raised against Bishop, Withers, and Adkins. Count Seven is an excessive force claim raised under "the Fourth and Fourteenth Amendments to the United States Constitution and its counterparts in the West Virginia Constitution" against all defendants. *Id.* at ¶¶ 52–54. Count Eight is an unlawful seizure claim against the Milton Police Department, though no specific constitutional provision is cited. *Id.* at ¶¶ 55–58. Count Nine alleges violations of "the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution and its West Virginia

---

[5] The Complaint is frequently ambiguous about which counts are raised against which defendants, variously employing the catch-all term "Defendants," *see Compl.*, at ¶ 24, a modified "said Defendants," *id.* at ¶ 54, and sometimes the singular "Defendant's," *id.* at ¶ 67. Where there is any ambiguity, the Court has construed the Complaint in Plaintiff's favor and assumes he has raised a given claim against all Defendants.

counterparts," and is once again raised solely again the Milton Police Department. *Id.* at ¶¶ 59–65. Finally, Count Ten is a claim of race discrimination in violation of Title VII of the Civil Rights Act of 1964 and is presumably raised against all Defendants. *Id.* at ¶¶ 66–68.

In view of the scattershot nature of Plaintiff's pleadings, the Court will structure its analysis in two parts. First, the Court will consider whether qualified or statutory immunity necessitates dismissal of certain counts. Following this analysis, the Court will turn to a consideration of whether each remaining count has stated a viable claim.

## A. Immunity

A threshold question for the Court's consideration is whether any of Plaintiff's claims are barred by immunity. As Plaintiff has alleged both federal and state law claims, two immunity doctrines are applicable: qualified immunity with respect to his federal claims, and statutory immunity with respect to his state claims. *See, e.g.*, *Zsigray v. Cnty. Comm'n of Lewis Cnty.*, No. 2:16-CV-64, 2017 WL 462011, at *4 (N.D.W. Va. Feb. 2, 2017) (applying qualified immunity framework to federal law claims and statutory immunity framework to state law claims).

### 1. Qualified Immunity

At the outset, the Court notes that qualified immunity has no bearing on any of Plaintiff's claims against the Milton Police Department. *Int'l Ground Transp., Inc. v. Mayor & City Council of Ocean City*, 475 F.3d 214, 219 (4th Cir. 2007) ("While individual defendants are protected by qualified immunity, municipalities are not."). The Court's analysis is therefore constrained to claims raised against the individual defendants. One other preliminary point is also worth noting: while Plaintiff has divided his Complaint into six nominal "State Law Claims" and four nominal "Federal Law Claims," *see Compl.*, at 4, 9, one state law claim—Count Four—alleges violations

of the United States Constitution, *see id.* at ¶ 38. As Count Four is raised against all Defendants, the Court will consider it as part of its broader qualified immunity analysis.

The doctrine of qualified immunity provides an affirmative defense to government officials against civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). As qualified immunity is "an immunity from suit rather than a mere defense to liability . . . it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth,* 472 U.S. 511, 526 (1985) (emphasis removed). To that end, the United States Supreme Court has "made clear that the driving force behind creation of the qualified immunity doctrine was a desire to ensure that insubstantial claims against government officials [will] be resolved prior to discovery." *Anderson v. Creighton*, 483 U.S. 635, 640 n.2 (1987) (internal quotation marks omitted) (brackets in original). Nevertheless, where "qualified immunity is asserted at the pleading stage, the precise factual basis for the plaintiff's claim or claims may be hard to identify." *Pearson v. Callahan*, 555 U.S. 223, 238–39 (2009).

Determining whether a government official is entitled to qualified immunity turns on two separate inquiries: first, whether the facts alleged demonstrate that a deprivation of a constitutional right has occurred, and second, whether that right was clearly established at the time of the alleged violation. *Id.* at 232. The Court may address either question first, as the second prong presents a particularly high bar that requires a plaintiff to demonstrate that "every reasonable official would have understood" that he or she was violating a constitutional right. *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson*, 483 U.S. at 640) (internal quotation marks omitted).

Despite this high threshold, the individual defendants face a formidable hurdle of their own: namely, that they must demonstrate that the Complaint itself reveals "all facts necessary" to

justify the application of qualified immunity. *In re Willis Towers Watson plc Proxy Litig.*, 937 F.3d 297, 302 n.2 (4th Cir. 2019). In considering whether the Complaint makes such a showing, the Court notes that Plaintiff has clearly and specifically alleged that Officer Bishop dragged him from his vehicle through a shattered window, *Compl.*, at ¶ 13, and that all three officers proceeded to "severely" beat him, *id.* at ¶ 16. He further alleges that he sustained "cuts to his face and body from the broken glass" and "injuries to his body a[n]d wrist" as a result of the beating. *Id.* at ¶ 17. The Court takes these allegations as true at this stage of proceedings, and is left to consider a narrow question: whether these allegations plausibly allege a violation of Plaintiff's clearly established rights under the Fourth and Fourteenth Amendments to the United States Constitution.

In grappling with this question, the Court begins by focusing on the precise nature of the right that Plaintiff claims Bishop, Withers, and Adkins have violated. The Court reads the Complaint as raising federal constitutional claims against the individual defendants in two counts: Count Four and Count Seven. Count Four is extremely loosely worded, and only appears to allege that the individual defendants failed to respect and protect "the rights given to Plaintiff under the West Virginia and United States Constitutions." *Id.* at ¶ 38. This wording is so broad as to render it practically meaningless, and it is not the Court's role to identify potentially relevant rights from the entire universe of federal constitutional law. Qualified immunity therefore shields the individual defendants from liability as to Count Four to the extent it is based on the United States Constitution.

Count Seven, on the other hand, very clearly alleges a violation of the Fourth Amendment's bar on excessive force. *Id.* at ¶ 52. When faced with allegations of excessive force in violation of the Fourth Amendment, the Court must consider "whether the force used to effect a particular seizure is reasonable." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (internal quotation marks

omitted). This inquiry, in turn, "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* (internal quotation marks omitted). This inquiry is highly fact-specific, requiring careful attention to the "circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* (citing *Tennessee v. Garner*, 471 U.S. 1, 7 (1985)). Each of these factors favors Plaintiff where, as here, he claims he was stopped for speeding and for tinted windows, that he posed no threat to the officers, and that he did not attempt to resist or evade arrest.

Defendants argue that Plaintiff has nevertheless failed to identify any "clearly established law, of which a reasonable person would have known, that Defendants violated." *Mem. of Law*, at 18. As an initial matter, a plaintiff need not cite chapter and verse of Fourth Amendment jurisprudence in his or her complaint to avoid dismissal on qualified immunity grounds. Second, the "nonexistence of a case holding the defendant's identical conduct to be unlawful does not prevent denial of qualified immunity [as] 'qualified immunity was never intended to relieve government officials from the responsibility of applying familiar legal principles to new situations.'" *Wilson v. Kittoe*, 337 F.3d 392, 403 (4th Cir. 2003) (quoting *Trulock v. Freeh*, 275 F.3d 391, 405 (4th Cir. 2001) (Michael, J., concurring)). It is well established within the Fourth Circuit that officers are not free to use unbounded force in response to "nonviolent misdemeanor" offenses. *Smith v. Ray*, 781 F.3d 95, 102 (4th Cir. 2015) (reasoning officer was not entitled to summary judgment on issue of qualified immunity where "officer took a situation where there obviously was no need for the use of any significant force and yet took an unreasonably aggressive tack that quickly escalated it to a violent exchange when the suspect instinctively attempted to

defend himself"); *see also Rowland v. Perry*, 41 F.3d 167, 174 (4th Cir. 1994) (holding officer was not entitled to summary judgment on issue of qualified immunity where arrestee "suffered a serious leg injury over a lost five[-]dollar bill"). Here, the Court believes that Plaintiff has laid out a set of allegations that—if proven—could provide justification for granting or denying qualified immunity. To rule categorically in either direction at this point would therefore be premature. *See, e.g.*, *Wilson v. Frame*, No. 2:19-cv-00103, 2020 WL 1482145, at *10 (S.D.W. Va. Mar. 23, 2020) (reasoning that "[d]iscovery will assist in determining whether Plaintiff's claims violated a clearly established . . . right" and denying motion to dismiss on qualified immunity grounds); *Cummings v. City of Wheeling, W. Va.*, No. 5:19CV271, 2019 WL 6609693, at *3 (N.D.W. Va. Dec. 5, 2019) (same). As such, qualified immunity is an insufficient justification to dismiss Count Seven against Bishop, Withers, or Adkins.

## 2. Statutory Immunity

A separate statutory immunity framework governs Plaintiff's state law claims, and is a product of the West Virginia Governmental Tort Claims and Insurance Reform Act ("Tort Claims Act").[6] *See* W. Va. Code § 29-12A-1, *et seq. Inter alia*, the Tort Claims Act provides that "[p]olitical subdivisions are liable for injury, death, or loss to persons or property caused by the negligent performance of acts by their employees while acting within the scope of employment." W. Va. Code § 29-12A-4(c)(2). The Milton Police Department is a political subdivision. *See Mem. of Law*, at 5. Inasmuch as "[t]he general rule of construction in governmental tort legislation cases favors liability, not immunity," political subdivisions are liable for losses resulting from their

---

[6] The Tort Claims Act does not shield political subdivisions or their employees from liability for "[c]ivil claims based upon alleged violations of the constitution or statutes of the United States." W. Va. Code § 29-12A-18.

employees' negligence "[u]nless the legislature has clearly provided for immunity under the circumstances." *Marlin v. Bill Rich Const., Inc.*, 482 S.E.2d 620, Syl. Pt. 2 (W. Va. 1996).

Conversely, an employee of a political subdivision is immune from liability unless (1) "his acts or omissions were manifestly outside the scope of employment or official responsibilities," (2) "his acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner," or (3) "liability is expressly imposed upon the employee by a provision of" West Virginia law. W. Va. Code § 29-12A-5(b). Two broad principles can be gleaned from this statutory framework: that political subdivisions are liable for the negligent—not intentional—actions of their employees, and that employees are presumptively immune from liability outside three enumerated exceptions. *See Kelley v. City of Williamson, W. Va.*, 655 S.E.2d 528, 535 (W. Va. 2007) ("Before any final resolution can be reached in this case, a jury must determine whether [Defendant] acted in a negligent manner, thus subjecting the City to liability for his actions under West Virginia Code § 29-12A-4(c)(2), or if his acts were in bad faith, malicious, or wanton and reckless, thus subjecting [Defendant] to liability under West Virginia Code § 29-12A-5(b).").

The question of the Milton Police Department's liability is therefore quite straightforward to resolve, as Plaintiff has alleged no facts that would even loosely support a finding of negligence on the part of Bishop, Withers, or Adkins. Indeed, the thrust of this entire lawsuit is that the officers intentionally subjected Plaintiff to a severe beating in violation of several constitutional rights and the common law. Negligence, this is not. *See Stone v. Rudolph*, 32 S.E.2d 742, 748 (W. Va. 1944) ("A wil[l]ful act is an intentional act, and, strictly speaking, there can be no such thing as wil[l]ful negligence, because negligence conveys the idea of inadvertence as distinguished from premeditation or formed intention."). It follows that the Milton Police Department cannot be held liable for the state constitutional violations raised in Counts One, Two, and Four. As Count Two

is a claim for vicarious liability raised solely against the Milton Police Department, it must be dismissed in its entirety.

Defendants make a slightly different argument with respect to Count Three, and contend that the Milton Police Department is immune from a claim for negligent hiring, retention, and supervision because the Tort Claims Act also provides immunity for claims involving "the method of providing police, law enforcement or fire protection." *Mem. of Law*, at 6 (citing W. Va. Code. § 29-12A-5(a)). They correctly note that *Albert v. City of Wheeling*, 792 S.E.2d 628, 632 (W. Va. 2016) provided that this statutory provision immunizes political subdivisions where a loss "is caused by the negligent performance of acts by the political subdivision's employees while acting within the scope of employment." Of course, this citation alone is enough to defeat their argument. First—and as has already been discussed—Plaintiff has not made any allegations of negligence on the part of the individual defendants. Second, Plaintiff's claim for negligent hiring, retention, and supervision is an analytically distinct claim from one for vicarious liability based on an employee's negligence. For this reason, the Tort Claims Act "does not contemplate immunity where a plaintiff sues based on negligent hiring and supervision of an employee." *Woods v. Town of Danville, W. Va.*, 712 F. Supp. 2d 502, 514 (S.D.W. Va. 2010). Nothing about the Supreme Court of Appeals' subsequent decision in *Albert* alters or amends this proposition. It follows that the federal claims raised in Counts Seven through Ten and the Negligent Hiring, Retention and Supervision claim raised in Count Three may not be dismissed under the Torts Claims Act.

The Court's analysis is not so clean-cut with respect to the individual officers' immunity under the Tort Claims Act. It is true that, as a general matter, employees of political subdivisions are not liable for actions taken within the scope of their employment. *See* W. Va. Code § 29-12A-5(b). Here, it seems clear that the officers were acting within the scope of employment in affecting

a stop and arrest. A closer question arises with respect to whether their actions were carried out "with malicious purpose, in bad faith, or in a wanton or reckless manner," however. *Id.* Though Defendants offer the conclusory statement that "[a] lawful arrest . . . does not evidence a malicious purpose," this argument alone is not enough to defeat the substance of Plaintiff's allegations evincing exactly such a purpose. *Mem. of Law*, at 20. Absent any further support, the Court is unable to conclude as a matter of law that the Torts Claim Act acts as a categorical bar to recovery against the individual defendants for their conduct.

In sum: both immunity doctrines serve to narrow the scope of Plaintiff's claims. Count One must be dismissed against the Milton Police Department, and Count Two must be dismissed in its entirety. Count Four must be dismissed with respect to the individual defendants to the extent Plaintiff's claim is based on the United States Constitution, and with respect to the Milton Police Department to the extent it is based on the West Virginia Constitution. With all this in mind, the Court turns to a consideration of Plaintiff's unaddressed claims.

## B. Remaining Claims

Plaintiff's remaining claims implicate a wide range of state and federal legal doctrines, though several claims overlap significantly. The Court will therefore undertake an analysis of each count in turn, treating them together where possible and separately where necessary.

### 1. Count One: Article III, Section 6 Claim Against Individual Defendants

The first count of Plaintiff's Complaint is a state constitutional claim against all defendants. *See Compl.*, ¶¶ 22–31. As discussed above, the Tort Claims Act precludes Plaintiff from stating a claim against the Milton Police Department in Count One, and so this analysis focuses solely on the individual defendants. Count One specifically alleges a violation of Article III, Section 6 of the West Virginia Constitution, which provides that "[t]he rights of the citizens to be secure in

their houses, persons, papers and effects, against unreasonable searches and seizures, shall not be violated." Defendants argue that there is no private cause of action for money damages under Section 6, and that Plaintiff has therefore failed to state a claim upon which relief may be granted. *See Mem. of Law*, at 6.

The first part of Defendants' argument is correct, at least as a factual matter; West Virginia courts have yet to directly address whether a private cause of action exists under Section 6, or most other provisions situated within Article III of the West Virginia Constitution. *See Spry v. West Virginia*, No. 2:16-CV-0175, 2017 WL 440733, at *9 (S.D.W. Va. Feb. 1, 2017) (Johnston, J.). Yet this statement alone tells only half the story. In *Hutchison v. City of Huntington*, 479 S.E.2d 649 (W. Va. 1996), the Supreme Court of Appeals of West Virginia held that "a private cause of action exists where a municipality or local government unit causes injury by denying that person rights that are protected by the Due Process Clause embodied within Article 3, § 10 of the West Virginia constitution." *Id.* at 654, Syl. Pt. 2. While this explicit holding is limited to Section 10's guarantee of due process, much of Justice Cleckley's reasoning in *Hutchison*—specifically, that to deny the existence of a private cause of action under Section 10 "would make our constitutional guarantees of due process an empty illusion"—is suggestive of a much broader intended application. *Id.* at 660; *see also Ray v. Cutlip*, No. 2:13-CV-75, 2014 WL 858736, at *3 n.1 (N.D.W. Va. Mar. 5, 2014) (reading *Hutchison* as holding that "West Virginia recognizes a private right of action for violations of the West Virginia Constitution" as a whole). Like other courts to consider the question, this Court is inclined to believe that a private cause of action for money damages exists to vindicate other rights embodied in Article III. *See Spry*, 2017 WL 440733, at *9. Yet the Court is not ignorant of the unsettled nature of this proposition within the Southern District of West Virginia. *See Nutter v. Mellinger*, No. 2:19-cv-00787, 2020 WL 401790, at *6

-14-

(S.D.W. Va. Jan. 23, 2020) (Goodwin, J.) (ruling "that a private plaintiff cannot bring a claim for damages under Article III, § 6 of the West Virginia Constitution when there is not an independent statute authorizing such a cause of action"). The relatively long-running character of this disagreement persuades the Court that certifying the question to the Supreme Court of Appeals may be prudent at some future stage of this action. *See Harper v. Barbagallo*, No. 2:14-cv-07529, 2016 WL 5419442, at *12–13 (S.D.W. Va. Sept. 27, 2016) (collecting cases and providing that "[t]he parties are hereby put on notice . . . that the Court intends to certify the question to the West Virginia Supreme Court if Plaintiff continues to proceed against Defendants under [a] theory of liability" grounded in Article III, Section 5).

Of course, the Court's analysis does not end here. Given their apparent syntactic similarities, West Virginia courts "traditionally construe[] Article III, Section 6 in harmony with the Fourth Amendment." *State v. Duvernoy*, 195 S.E.2d 631, 634 (W. Va. 1973). The Court therefore applies the same "objective reasonableness" standard to Plaintiff's state constitutional claim as discussed above. *See Graham*, 490 U.S. at 388. An inquiry into the objective reasonableness of an officer's use of force necessitates careful attention to the "circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* (citing *Tennessee*, 471 U.S. at 7). At risk of repeating the Court's earlier analysis, each of these factors tilts in Plaintiff's favor at this stage of litigation. He claims he was unlawfully stopped for minor crimes he was not committing, that he did nothing that could be interpreted in a threatening manner, and that he never attempted to resist arrest or flee. These allegations are all Plaintiff need present to state a claim for relief against the individual defendants under Article III, Section 6 of the West Virginia Constitution.

2.   **Count Three: Negligent Hiring, Retention, and Supervision Claim Against the Milton Police Department**

Plaintiff's next claim is one for negligent hiring, retention, and supervision, and is raised against the Milton Police Department. *See Compl.*, at ¶¶ 32–36. Defendants advance several arguments in favor of dismissal, but principally contend that Plaintiff has failed to plead any facts supporting their claim. *Mem. of Law*, at 9. The Court agrees.

As an initial matter, West Virginia recognizes a cause of action for negligent hiring and retention. *See McCormick v. W. Va. Dep't of Public Safety*, 503 S.E.2d 502, 506–07 (W. Va. 1998); *State ex rel. W. Va. State Police v. Taylor*, 499 S.E.2d 283, 289 n.7 (W. Va. 1997). To determine whether an employer has acted negligently in hiring, retaining, or supervising an employee, courts ask several questions:

> When the employee was hired or retained, did the employer conduct a reasonable investigation into the employee's background vis a vis the job for which the employee was hired and the possible risk of harm or injury to co-workers or third parties that could result from the conduct of an unfit employee? Should the employer have reasonably foreseen the risk caused by hiring or retaining an unfit person?

*McCormick*, 503 S.E.2d at 506. These questions take on increased importance with respect to police officers, who are "permitted to carry guns, use necessary force to effect arrest, and enter civilian residences in certain circumstances." *Woods*, 712 F. Supp. 2d at 514. Yet despite a police department's heightened duties to the public, Plaintiff has failed to plead a single fact that could support a finding that the Milton Police Department negligently hired, retained, or supervised the individual defendants. He has not alleged that the Department failed to investigate the officers' backgrounds, or even that there is anything in their backgrounds that an investigation would have revealed. Just as importantly, he has not alleged that any prior event or incident would have placed the Department on notice of an increased risk to the public. A claim for negligent hiring, retention,

and supervision is not a mere vehicle for claims based on a theory of vicarious liability, and boilerplate legal conclusions are not enough to avoid dismissal where a plaintiff pleads no facts related to an employer's negligence. Dismissal is therefore warranted with respect to Count Three.

### 3.  Count Four: Punitive Damages Claim Against Individual Defendants

As discussed briefly above, Count Four is a loosely-worded claim that appears to seek punitive damages for violations of "the rights given to Plaintiff under the West Virginia and United States Constitutions." *Compl.*, at ¶ 37–41. Defendant argues that West Virginia law bars an award of punitive damages against political subdivisions, that § 1983 does the same, and that Plaintiff has otherwise failed to plead facts that would justify an award of punitive damages against the individual defendants. *Mem. of Law*, at 20–21.

In general, "West Virginia does not recognize a separate cause of action for punitive damages." *S.F. v. Higginbotham*, No. 2:18-cv-94, 2019 WL 286746, at *3 (N.D.W. Va. Jan. 22, 2019). There is an exception to this rule where a claim is based "on some underlying wrongful act involving gross fraud, malice, oppression, or wanton, willful, or reckless conduct or criminal indifference to civil obligations affecting the rights of others." *Cook v. Heck's, Inc.*, 342 S.E.2d 453, 462 (W. Va. 1986). Plaintiff bases his claim on allegations of such wrongful conduct. *Compl.*, at ¶ 39. Of course, allegations of wrongful conduct are not automatically sufficient to survive a motion to dismiss. First, West Virginia law clearly provides that "[i]n any civil action involving a political subdivision or any of its employees as a party defendant, an award of punitive or exemplary damages against such political subdivision is prohibited." W. Va. Code § 29-12A-7. As such, Plaintiff cannot recover punitive damages from the Milton Police Department on any of his state law theories. The same is true of his federal constitutional claims, which he advances pursuant

to 42 U.S.C. § 1983. Simply put, municipalities are immune from punitive damages under § 1983. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981).

As the Court has already concluded that Plaintiff cannot succeed on his federal constitutional claim against the individual defendants contained in Count Four, there is accordingly just one category of claims for punitive damages that remains: those raised against the individual defendants under state law. In West Virginia,

> [a]n award of punitive damages may only occur in a civil action against a defendant if a plaintiff establishes by clear and convincing evidence that the damages suffered were the result of the conduct that was carried out by the defendant with actual malice toward the plaintiff or a conscious, reckless and outrageous indifference to the health, safety and welfare of others.

W. Va. Code § 55-7-29(a). This is no easy standard to meet, and Defendant argues that Plaintiff's allegations do not demonstrate conduct that overcomes this threshold. *Mem. of Law*, at 22. The Court disagrees. Plaintiff has alleged (though, significantly, has not *proven*) a violent, racially-motivated encounter with the three individual defendants that was malicious, willful, and wanton. *Compl.*, at ¶ 39. It is entirely possible that Plaintiff will be unable to demonstrate that this is what actually occurred, but that is simply not the question at the motion to dismiss stage. Dismissing Plaintiff's claim for punitive damages against the individual defendants would thus be premature.

### 4.  Count Five: Battery Claim Against Individual Defendants

Plaintiff's penultimate state law claim is one for battery, and is raised against the individual defendants. *Compl.*, at ¶¶ 42–46. "An actor is subject to liability to another for battery if (a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (b) an offensive contact with the person of the other directly or indirectly results." *W. Va. Fire & Cas. Co. v. Stanley*, 602 S.E.2d 483, 494 (W. Va. 2004) (quoting Restatement (Second) of Torts § 18 (1965)). Yet an act that would otherwise

constitute battery "does not constitute tortious conduct if the actor is privileged to engage in such conduct." *Hutchinson v. W. Va. State Police*, 731 F. Supp. 2d 521, 547 (S.D.W. Va. 2010). Relevant here, "an individual engaged in an arrest is afforded a privilege that precludes a battery claim." *Weigle v. Pifer*, 139 F. Supp. 3d 760, 776 (S.D.W. Va. 2015); *see also Lee v. City of S. Charleston*, 668 F. Supp. 2d 763, 779 (S.D.W. Va. 2009) (reasoning that "a peace officer acting within the limits of his appointments is privileged to arrest another"). If the Court's inquiry were to end here, dismissal would be appropriate. Nevertheless, "force that would otherwise constitute a battery is not privileged if that force is excessive." *Weigle*, 139 F. Supp. 3d at 777. As has already been discussed, Plaintiff has succeeded in stating an excessive force claim against the individual defendants under the West Virginia Constitution. It would be illogical to conclude that a claim for battery is subject to dismissal on privilege grounds where an underlying excessive force claim is not, and so Defendants' Motion must be denied with respect to Plaintiff's battery claim.

### 5. Count Six: Intentional Infliction of Emotional Distress Claim Against Individual Defendants

Plaintiff's final state law claim is one for intentional infliction of emotional distress ("IIED"). *Compl.*, at ¶¶ 47–51. To state a claim for IIED in West Virginia, a plaintiff must allege

> (1) conduct by the defendant which is atrocious, utterly intolerable in a civilized community, and so extreme and outrageous as to exceed all possible bounds of decency; (2) the defendant acted with intent to inflict emotional distress or acted recklessly when it was certain or substantially certain such distress would result from his conduct; (3) the actions of the defendant caused the plaintiff to suffer emotional distress; and (4) the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it.

*Travis v. Alcon Labs., Inc.*, 504 S.E.2d 419, 425 (W. Va. 1998) (quoting *Hines v. Hills Dept. Stores, Inc.*, 454 S.E.2d 385, 392 (W. Va. 1994) (Cleckley, J., concurring)). "Whether conduct may reasonably be considered outrageous is a legal question, and whether conduct is in fact

outrageous is a question for jury determination." *Love v. Georgia-Pac. Corp.*, 550 S.E.2d 51, 53, Syl. Pt. 7 (W. Va. 2001). To clear this threshold, a plaintiff must allege conduct that is "so outrageous in character, and so extreme in degree, as to go *beyond all possible bounds of decency,* and to be regarded as *atrocious* and *utterly intolerable in a civilized society." Keyes v. Keyes*, 392 S.E.2d 693, 696 (W. Va. 1990) (emphasis in original).

In determining whether Plaintiff has met this burden here, the Court reiterates that this action is still at the motion to dismiss stage. Evidence could reveal a brutal beating that could be considered outrageous . . . or it could not. Evidence could reveal that the individual defendants acted intentionally or recklessly . . . or it could not. Lacking any such evidence and relying solely on Plaintiff's allegations, the Court is once again left with a severe beating that resulted in extensive physical and psychological injuries. This is sufficient to state a claim for relief on a theory of IIED.

### 6.  Counts Seven and Eight: Federal Constitutional Claims Against All Defendants

Counts Seven and Eight of Plaintiff's Complaint are federal constitutional claims against all defendants that are raised pursuant to 42 U.S.C. § 1983. *Compl.*, at ¶¶ 52–58. Count Seven is styled as a claim for "Excessive Force" in violation of the Fourth and Fourteenth Amendments,[7] while Count Eight is a claim for "Unlawful Seizure of a Person" in violation of "Plaintiff's clearly established right to remain in his vehicle without being seized." *Id.* The Court reads this second claim as arising under the Fourth and Fourteenth Amendments as well.[8] Defendants argue that

---

[7] This Count also references the Fourth and Fourteenth Amendments "counterparts in the West Virginia Constitution." *Compl.*, at ¶ 54. Given that this claim is explicitly styled a "Federal Law Claim," *id.* at 9, the Court does not read the Complaint as seeking relief under the West Virginia Constitution.

[8] Defendants argue that Plaintiff's failure to identify a specific constitutional provision in Count Eight warrants dismissal. *See Mem. of Law*, at 10–11. Of course, the Court agrees that § 1983 "is not itself a source of substantive rights." *Baker v. McCollan*, 443 U.S. 137, 144 (1979).

both counts must be dismissed because Plaintiff's own allegations demonstrate that the individual defendants acted in an objectively reasonable fashion. *Mem. of Law*, at 11–15.

With respect to Plaintiff's excessive force claim, the Court's analysis is straightforward and focused on the reasonableness of the officers' actions. "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Graham*, 490 U.S. at 396 (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)). Instead, Courts must look to the totality of the circumstances surrounding a given claim and consider the reasonableness of a particular use of force "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* Yet as has already been noted, this analysis necessarily "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade by flight." *Id.* At present, these facts are simply not before the Court. Instead, the Court is left only with Plaintiff's allegations—allegations that officers believed he had committed minor traffic offenses,[9] that he posed no immediate threat to the officers, and that he was not resisting arrest or attempting to flee. These allegations are sufficient to state a claim for excessive force in violation of the Fourth and Fourteenth Amendments.[10]

---

Yet the Court also reads the Complaint as a whole, and notes that Count Eight "incorporates by reference the allegations in paragraphs 1 through 54 . . . *verbatim*." *Compl.*, at ¶ 55 (emphasis in original). This reference—as well as common sense—is enough to deduce that Plaintiff raises his claims for unlawful seizure under the Fourth and Fourteenth Amendments.

[9] While Plaintiff contests that he was speeding or that his windows were tinted, the Court considers reasonableness from an officer's perspective. *See Graham*, 490 U.S. at 396.

[10] Defendants argue that Plaintiff's claim must also be dismissed to the extent it is predicated on the Fourteenth Amendment in light of the United States Supreme Court's holding that "if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." *United States v. Lanier*, 520 U.S. 259,

Count Eight of Plaintiff's Complaint presents a closer question. Styled a claim for unlawful seizure, Plaintiff appears to contend that the officers acted unlawfully by removing him from his vehicle absent "reasonable suspicion and/or probable cause that a crime ha[d] been committed." *Compl.*, at ¶ 57. To the contrary, Plaintiff's own allegations demonstrate that Officer Bishop believed two (admittedly minor) crimes had been committed: speeding, and driving with overly-tinted windows. *Id.*, at ¶¶ 8, 11. The United States Supreme Court has long recognized that officers may order a driver out of his vehicle for the duration of a traffic stop, *Pennsylvania v. Mimms*, 434 U.S. 106, 111 (1977), and it follows that officers may forcibly remove a driver who refuses such an order, *United States v. Taylor*, 857 F.2d 210, 214 (4th Cir. 1988).

Nevertheless, a traffic stop must still be legitimate at its inception for a seizure to comport with the Fourth Amendment. *United States v. Bernard*, 927 F.3d 799, 805 (4th Cir. 2019). While Plaintiff's allegations certainly evince a belief on the part of Officer Bishop that Plaintiff had committed two crimes, this belief must be based on a reasonable, articulable suspicion that a crime has been committed. *United States v. Sokolow*, 490 U.S. 1, 7 (1989). Without any evidence as to the "particularized and objective basis" for his suspicions, *Ornales v. United States*, 517 U.S. 690, 696 (1996), the Court cannot conclude that Plaintiff's initial seizure was lawful. Indeed, Plaintiff expressly disclaims that he was travelling seventy-two miles per hour, that his windows were illegally tinted, or that he obstructed the officers in any way. *See Compl.*, at ¶¶ 9, 15. Taking his allegations as true, the officers may have lacked the sort of reasonable, articulable suspicion

---

272 n.7 (1997). This is true enough as a statement of law, and dismissal would be warranted if Plaintiff were actually attempting to assert a substantive due process claim. Yet Defendants' argument ignores the fact that Plaintiff's Fourth Amendment claim would be impossible absent the Fourteenth Amendment, which incorporated the Fourth Amendment's guarantees against the states. *See Wolf v. Colorado*, 338 U.S. 25, 27–28 (1949).

necessary to effectuate a lawful stop. It follows that Defendants' Motion will be denied with respect to Counts Seven and Eight of Plaintiff's Complaint.

### 7.  Count Nine: *Monell* Claim Against the Milton Police Department

Plaintiff's final constitutional claim appears to raise a *Monell* claim against the Milton Police Department, alleging that it engaged in a custom of "using obstruction as a charge when no facts support it" and failing to "adequately train, supervise, and discipline officers regarding probable cause for an arrest, lawful detention, and proper use of an obstruction charge." *Compl.*, at ¶¶ 60, 62. He claims this conduct violates the Fourth and Fourteenth Amendments to the United States Constitutions.[11] Defendants counter by arguing that Plaintiff has not demonstrated a causal connection between the alleged policies and any injury or that the alleged policies were part of a pattern.

For the purposes of § 1983, a state's political subdivisions are considered "persons" amenable to suit. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1976). Importantly for the purposes of this case, however, political subdivisions may not be held vicariously liable for the actions of its employees. *Id.* at 694. Instead, a plaintiff must "adequately plead and prove the existence of an official policy or custom that is fairly attributable to the municipality and that proximately caused the deprivation of their rights." *Semple v. City of Moundsville*, 195 F.3d 708, 712 (4th Cir. 1999). The Fourth Circuit Court of Appeals has clarified that

> [a] policy or custom for which a municipality may be held liable can arise in four ways: (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that "manifest[s] deliberate

---

[11]  He also mentions the "West Virginia counterparts" of both amendments, though a *Monell* claim raised pursuant to § 1983 obviously has no relationship to the West Virginia Constitution. To the extent Plaintiff seeks to state a claim under the state constitution, he has failed to do so.

indifference to the rights of citizens"; or (4) through a practice that is so "persistent and widespread" as to constitute a "custom or usage with the force of law."

*Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003) (quoting *Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1999)). Plaintiff's allegations appear to focus on the third and fourth of these grounds.

With respect to his failure-to-train allegations, the Court begins by acknowledging "that the inadequacy of police training may serve as the basis for § 1983 liability" where "such inadequate training can justifiably be said to represent 'city policy.'" *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989). This standard requires Plaintiff to allege "that a municipal governing body . . . has followed a policy of inadequate training" for police duties for which "'the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers . . . can reasonably be said to have been deliberately indifferent to the need.'" *Revene v. Charles Cnty. Com'rs*, 882 F.2d 870, 874–75 (4th Cir. 1989). In meeting this burden, "[a] single act . . . alleged cannot suffice, standing alone, to establish the existence of such a policy." *Id.* at 875. Yet Plaintiff connects his failure-to-train allegation to his other *Monell* claim: that officers routinely charge "obstruction" to protect them from allegations of excessive force. *Compl.*, at ¶ 62. Plaintiff alleges that Milton Police Department officers use obstruction charges to justify unconstitutional behavior, and that this custom directly led to his own injuries. *Id.* at ¶ 61–62. These allegations are admittedly undeveloped, and Plaintiff will be required to prove them as this action moves forward. Yet, for the limited purpose of a motion to dismiss, Plaintiff has sufficiently stated a claim under *Monell*.

### 8. Count Ten: Title VII Claim Against the Milton Police Department

Plaintiff's final claim is that the Milton Police Department is liable for discrimination based on race in violation of Title VII of the Civil Rights Act of 1964. *Id.* at ¶ 66–68. *Inter alia*, Title VII prohibits an employer from discriminating against any of its employees based on race "with

respect to his . . . terms, conditions, or privileges of employment." 42 U.S.C. § 2000e-2(a). This is not an employment case, it is unclear what possible bearing Title VII could have on Plaintiff's underlying allegations, and dismissal is well warranted.

### IV. CONCLUSION

As noted above, the Court **STRIKES** as untimely Plaintiff's Response, ECF No. 12, and **GRANTS IN PART** the Motion, ECF No. 8, with respect to Counts Two, Three, and Ten; Counts One and Four solely as raised against the Milton Police Department; and Count Four to the extent it seeks to hold Bishop, Withers, and Adkins liable for punitive damages under federal law. Conversely, the Court **DENIES IN PART** the Motion with respect to Count One as raised against Bishop, Withers, and Adkins in their individual capacities; Counts Five through Nine in their entirety; and Count Four to the extent is seeks to hold Bishop, Withers, and Adkins liable for punitive damages under state law.

The Court **DIRECTS** the Clerk to send a copy of this Memorandum Opinion and Order to counsel of record and any unrepresented parties.

ENTER:        May 11, 2020

_____
ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE